**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X   Case No.
JAYLEEN HERRERA,

                       Plaintiff,   **COMPLAINT**

              - against -

BOSTON MARKET CORPORATION,   **PLAINTIFF DEMANDS A TRIAL BY JURY**

                      Defendant.
-------------------------------------------------------X

Plaintiff JAYLEEN HERRERA ("Plaintiff") by her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendant, upon information and belief, as follows:

### NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. §§ 2000e(k) (the "PDA"), the New York State Human Rights Law, New York State Executive Law §§ 296 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code §§ 8-502(a) *et seq.*, and seeking damages to redress the injuries she has suffered **as a result of being discriminated and retaliated against on the basis of her sex/gender and her pregnancy**.

### JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

2. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

3. This Court has supplemental jurisdiction over Plaintiff's claims under the NYSHRL and the NYCHRL pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as the acts complained of occurred within the Eastern District of New York.

5. By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 14, 2020, (b) receiving a Notice of Right to Sue from the EEOC on July 13, 2020, (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC, and (d) contemporaneously with the filing of this Complaint, mailing copies thereof to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York pursuant to the notice requirements of § 8-502 of the New York City Administrative Code, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action. A copy of the Notice of Right to Sue is annexed hereto as **"Exhibit A;"** a copy of the transmittal letter to the NYCCHR *et ano.* is annexed hereto as **"Exhibit B."**

## PARTIES

6. Plaintiff is a resident of the State of New York and Queens County.

7. Defendant BOSTON MARKET CORPORATION ("Defendant BOSTON MARKET") is a foreign business corporation duly existing pursuant to, and by virtue of, the laws of the State of Delaware.

8. Defendant BOSTON MARKET operates a store at 6018 Metropolitan Avenue, Ridgewood, New York 11385.

9. Upon information and belief, Defendant BOSTON MARKET has more than fifteen employees.

10. At all relevant times, Plaintiff was an employee of the Defendant BOSTON MARKET.

## MATERIAL FACTS

11. On or about March 8, 2019, Plaintiff began working for the Defendant BOSTON MARKET as an "Cashier."

12. Plaintiff was being paid $15 per hour and normally worked five days per week for about 30 hours per week.

13. Plaintiff's anticipated salary for 2019 was approximately $23,400.00.

14. On or about July 3, 2019, Plaintiff found out she was pregnant.

15. In or around mid-September 2019, while Plaintiff was working a morning shift with Ninfa Bautista ("Bautista"), the General Manager at Defendant BOSTON MARKET, Bautista noticed that Plaintiff was using the bathroom very frequently and inquired if she was pregnant.

16. Bautista appeared to be shocked and upset when Plaintiff told her that she was indeed pregnant and that she needed to use the bathroom frequently due to her pregnancy.

17. Bautista told Plaintiff, in Spanish, **"You should have kept your legs closed. You have a baby already and now you have another one coming. You're so stupid!"**

18. Plaintiff felt extremely humiliated and offended by her supervisor's comments.

19. On or about September 25, 2019, Bautista asked another coworker of Plaintiff's, Jannette Mullins, if she knew that Plaintiff was pregnant and then went on to state **"She's only 20. She has a baby already. She's so stupid."**

20. Plaintiff felt extremely uncomfortable, embarrassed, and offended by Ms. Bautista's continuous discriminatory comments.

21. On or about that same week, on September 23 and 26, 2019, Bautista assigned Plaintiff shifts on two of the days and times that Plaintiff had already informed her that she was not able to go to work.

22. On or about September 28, 2019, Plaintiff did not come in to work due to a domestic violence incident that she experienced at home.

23. **That same day, and merely two weeks after learning about Plaintiff's pregnancy, Bautista took Plaintiff completely off the work schedule, effectively terminating her.**

24. Plaintiff's termination was clearly discriminatory based on Plaintiff's pregnancy and gender.

25. Plaintiff was approximately three months pregnant at the time.

26. Upon information and belief, other non-pregnant employees continuously call out without sufficient warning during the weekends, come to work more than an hour late, and even fail to show up for some of their shifts without them receiving any verbal or written reprimands.

27. Plaintiff was told by another coworker that Bautista had informed Plaintiff's former coworkers that Plaintiff had been fired, even though Bautista did not directly inform Plaintiff of her decision.

28. In response, Plaintiff tried to reach Bautista by phone to discuss her taking Plaintiff off the work schedule and explain why she had not come in to work. Bautista hung up the phone after realizing it was Plaintiff calling her and proceeded to ignore the remaining of Plaintiff's calls.

29. Plaintiff then text messaged Bautista that she was told by her coworker that she was being fired for not appearing for a shift, even though policy was for the company to give employees three warnings before firing them.

30. Plaintiff also informed Bautista about the domestic violence that she had been experiencing.

31. On or about October 2, 2019, Plaintiff emailed Andy Tricouros ("Tricouros"), an Area Manager for the Defendant BOSTON MARKET, to complain about the discrimination and retaliation that she had experienced.

32. Later that day, Plaintiff spoke with Tricouros on the phone and again reiterated everything that had taken place and how Bautista had been discriminating and retaliating against her on the basis of her pregnancy. Tricouros told Plaintiff that he would look into her complaint and get back to her.

33. On or about October 3, 2019, Plaintiff spoke to Doug Kramer ("Kramer"), a Human Resources representative of the Defendant BOSTON MARKET to complain about the discrimination that she had experienced on the basis of her pregnancy. Kramer informed Plaintiff that he would be investigating the matter. Kramer then emailed Plaintiff and attached a statement form for Plaintiff to draft a statement summarizing her complaints of discrimination and retaliation.

34. On or about October 5, 2019, Plaintiff emailed Tricouros to ask for an update in relation to their conversation.

35. On or about October 9, 2019, Plaintiff emailed Kramer to inquire about the investigation that he had previously told her would be conducted in relation to her complaint. In her email, Plaintiff included the details of the discrimination that she had experienced.

36. Kramer stated that they were investigating her concerns "as well as those of several others that have come forward," and that he would have more information for Plaintiff the following week.

37. On or about October 10, 2019, Plaintiff visited the store to speak to Bautista since she was in dire need of a job.

38. Bautista told Plaintiff to speak to Tricouros about it, who was present at the time.

39. Bautista proceeded to tell Tricouros that she was not able to put Plaintiff back on the schedule because she had hired new employees.

40. Plaintiff complained to Tricouros about Bautista's discriminatory comments related to her pregnancy as well as about Bautista getting Plaintiff off the work schedule without a warning as was the practice at Defendant BOSTON MARKET.

41. Tricouros then told Plaintiff that she would be rehired and that she could continue working for Defendant BOSTON MARKET.

42. On or about that same day, Plaintiff's coworker Rachel Cuevas ("Cuevas") sent an email to Kramer, complaining about the discrimination that Plaintiff was experiencing.

43. Plaintiff was eventually put back on the work schedule on or about October 16, 2019.

44. However, Plaintiff's work shifts were decreased from five days per week to only two or three days per week.

45. Upon information and belief, more shifts were being given to newer, non-pregnant employees that Bautista hired to replace Plaintiff.

46. On or about November 20, 2019, Plaintiff was hospitalized for severe depression, anxiety, and pregnancy-related conditions.

47. Throughout her hospitalization, Plaintiff was not allowed to use her cellphone and was not able to notify Defendant BOSTON MARKET about the cause of her absence.

48. Plaintiff was discharged on or about November 25, 2019 and immediately emailed her discharge documentation to Tricouros explaining that she had just been discharged after her admission on or about November 20, 2019.

49. On or about November 27, 2019, Plaintiff went in for her 6 p.m. shift.

50. Bautista told Plaintiff that she did "not look okay" and that she should go home and return the following day.

51. On or about November 30, 2019, Plaintiff noticed that once again she was left out of the work schedule.

52. Upon information and belief, this change in Plaintiff's schedule was in retaliation for her complaining of discrimination or, in the alternative, it was based on the fact that Plaintiff was pregnant.

53. Plaintiff text messaged Bautista to inquire why she had been left out of the work schedule. Bautista falsely claimed that it was because Plaintiff had not come in for her shift on or about November 27, 2019. Plaintiff reminded Bautista that she did go to work on or about November 27, 2019 but Bautista had sent her home after telling her that she did "not look okay." Bautista did not respond further.

54. On or about December 3, 2019, Plaintiff again complained to Bautista about her hours having been cut down from what they used to be before Bautista had unfairly terminated her on September 28, 2019, and stated that she was more than able to work despite her pregnancy and hospitalization for depression and anxiety.

55. On or about December 12, 2019, Plaintiff's work hours were again reduced. Upon information and belief, this change in Plaintiff's schedule was in further retaliation for her complaining of discrimination or, in the alternative, it was based on the fact that Plaintiff was pregnant. By way of example, Plaintiff was only scheduled to work about 26 hours from on or about December 30, 2019 to on or about January 12, 2020.

56. Other than cutting Plaintiff's work hours, on multiple occasions, Bautista made inappropriate comments to Plaintiff while Plaintiff was pregnant, including, **"You're so slow."** These comments were made in front of other coworkers of Plaintiff's and made her feel extremely uncomfortable.

57. Upon information and belief, Bautista did not treat non-pregnant workers with such hostility and did not criticize their work performance in such a manner.

58. On or about March 7, 2020, Plaintiff emailed Bryan Monteagudo, who upon information and belief is a supervisor at Defendant BOSTON MARKET, the forms that she needed her employer to sign for her to go on Paid Family Leave in relation to her pregnancy. Plaintiff was requesting a reasonable accommodation.

59. On or about March 19, 2020, Plaintiff text messaged Bautista to ask her when was a good time for Plaintiff to meet with Bautista for purposes of completing the Paid family Leave paperwork required for Plaintiff to go on leave in relation to her pregnancy. Bautista did not respond to Plaintiff's text and completely ignored her request.

60. On or about March 20, 2020, Plaintiff again emailed Defendant BOSTON MARKET at corporate email dayforce@bost.com to restate that she had been trying to get the paperwork related to her maternity leave completed but was not getting any response. Plaintiff again

requested for the paperwork and information that she needed in connection to going on maternity leave.

61. Plaintiff did not get any response and on or about March 22, 2020, she emailed Kramer, the Human Resources representative of the Defendant BOSTON MARKET and stated that she had been asking Defendant BOSTON MARKET's management for weeks about information on starting her maternity leave but was not getting any responses. Plaintiff complained that she had been ignored by Bautista and Defendant BOSTON MARKET's management and was still put on the work schedule even though she had been requesting to have the paperwork completed for her to go on maternity leave. Kramer never responded to Plaintiff's email.

62. On or about March 23, 2020, Plaintiff text messaged Bautista to request information for the paperwork that she had to complete in relation to her going on maternity leave. Bautista did not respond to Plaintiff's text and completely ignored her request.

63. On or about March 31, 2020, Plaintiff again text messaged Bautista to inform her that she had given birth and that she needed information from the Defendant BOSTON MARKET in relation to the process for her to go on maternity leave. Plaintiff wrote that it was upsetting to her that she still had not received this information even though she had been requesting it for weeks.

64. At last, after about a month of desperately trying to get information about going on maternity leave, Bautista finally responded to Plaintiff's text and provided her the information of the person she should reach out to in relation to her request. Plaintiff had to wait until *after* she gave birth to take advantage of the New York State's Paid Family Leave due to the Defendant BOSTON MARKET ignoring her requests. This delay caused

Plaintiff to feel extremely anxious, disturbed, humiliated, and disrespected on the basis of her pregnancy.

65. After Plaintiff's maternity leave benefits ended, Plaintiff felt compelled to not return to work for Defendant BOSTON MARKET given how hostile her work environment had been throughout her pregnancy. As such, Plaintiff was constructively discharged by the Defendant BOSTON MARKET.

66. In the alternative, Defendant BOSTON MARKET effectively terminated by not adding her back on the work schedule after her maternity leave ended.

67. As a result of Defendant BOSTON MARKET's actions, Plaintiff feels extremely humiliated, offended, disgusted, degraded, victimized, embarrassed, and emotionally distressed.

68. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further experienced severe emotional and physical distress.

69. As a result of the above, Plaintiff has been damaged in an amount in excess of the jurisdiction of the Court.

70. Defendant BOSTON MARKET's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands punitive damages.

## AS A FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER TITLE VII

71. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

72. Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e(k) provides, in pertinent part, that:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 703(h) of this title [42 USCS § 2000e-2(h)] shall be interpreted to permit otherwise.

73. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e *et seq.*, for relief based upon the unlawful employment practices of the Defendant BOSTON MARKET. Plaintiff complains of Defendant BOSTON MARKET's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender.

74. Defendant BOSTON MARKET violated the sections cited herein as set forth.

75. Defendant BOSTON MARKET engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by discriminating against Plaintiff because of her **sex/gender (female/pregnancy)**.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII

76. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

77. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> (1) to discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

78. Defendant BOSTON MARKET engaged in unlawful employment practices prohibited by discriminating and retaliating against Plaintiff with respect to the terms, conditions or privileges of employment.

### AS A THIRD CAUSE OF ACTION
### DISCRIMINATION UNDER THE NYSHRL

79. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

80. New York State Executive Law § Executive Law § 296 provides that,

    It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, **sex**, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

81. Defendant BOSTON MARKET engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her **pregnancy** and **sex/gender (female)**.

### AS A FOURTH CAUSE OF ACTION
### RETALIATION UNDER THE NYSHRL

82. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

83. New York State Executive Law § 296(1)(e) provides that, "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

84. Defendant BOSTON MARKET engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her opposition to the unlawful employment practices of the Defendant BOSTON MARKET.

## AS A FIFTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYCHRL

85. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

86. The New York City Administrative Code § 8-107(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, **gender**, disability, marital status, partnership status, caregiver status, sexual orientation, uniformed service, or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

87. Defendant BOSTON MARKET engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of her **sex/gender (female/pregnancy)**.

## AS A SIXTH CAUSE OF ACTION
## RETALIATION UNDER THE NYCHRL

88. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

89. The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

90. Defendant BOSTON MARKET engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(7) by retaliating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendant BOSTON MARKET.

## JURY DEMAND

91. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant BOSTON MARKET:

A. Declaring that Defendant BOSTON MARKET engaged in unlawful employment practices prohibited by the Title VII, the NYSHRL, and the NYCHRL, in that Defendant BOSTON MARKET discriminated and retaliated against Plaintiff on the basis of her pregnancy and gender;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant BOSTON MARKET unlawful discrimination and retaliation and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

F.   Awarding Plaintiff such other and further relief as the Court may deem equitable, just and

proper to remedy the Defendant BOSTON MARKET's unlawful employment practices.

Dated: New York, New York
September 11, 2020

                              **PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

By: _____
Brittany A. Stevens, Esq.
Katerina Housos, Esq.
Phillips & Associates, PLLC
*Attorneys for the Plaintiff*
45 Broadway, Suite 430
New York, New York 10006
T: (212) 248 – 7431
F: (212) 901 – 2107
bstevens@tpglaws.com
khousos@tpglaws.com